**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 26, 2022**

# In the Court of Appeals of Georgia

A22A1131. WHITCOMB v. BANK OF AMERICA, N.A. et al.

MILLER, Presiding Judge.

In this property dispute, the trial court granted summary judgment to Bank of America, N. A.[1] and ordered the rescission of a deed under power and the reformation of a security deed based on a mutual mistake. The property owner, James P. Whitcomb, appeals from the trial court's order. Whitcomb argues that (1) Bank of America lacked standing to bring this action; (2) the deed under power could not be rescinded based upon an alleged mistake, given the language of the deed; (3) Bank of America's claims were barred by its own negligence; (4) Bank of America was required to tender the property back to him before bringing an action to rescind the

---

[1] The appellee's full name is Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP.

foreclosure sale; and (5) Bank of America did not establish a prima facie case for rescission and reformation. We determine that the trial court correctly ordered rescission and reformation of the deeds based on a mutual mistake, and we therefore affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from an order either granting or denying summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Ledford v. Smith*, 274 Ga. App. 714, 715 (618 SE2d 627) (2005).

Viewed in this light, the evidence shows that Whitcomb and his former wife, Laura Whitcomb, acquired two adjacent parcels of land in Forsyth County. The first parcel encompassed 11.7 acres and contained a home, and the second parcel spanned approximately 1.074 acres (the unimproved parcel). The former couple then executed a security deed in favor of Sunshine Mortgage Corporation for a 1-acre tract from the larger parcel, and the home was included in this 1-acre tract (the improved parcel). Several years later, Whitcomb and Laura further conveyed a 4.04-acre tract from the

2

larger parcel to a third party. Laura then conveyed her interest in the properties to Whitcomb via quitclaim deeds.

Thereafter, Whitcomb received a "refinance" loan from Wells Fargo Home Mortgage, Inc., in the amount of $110,000.00, and the security deed for the Wells Fargo Mortgage loan encumbered the unimproved parcel. Whitcomb then obtained a loan from Wells Fargo Bank, N.A. in the amount of $159,243, and the corresponding security deed again used the legal description for the unimproved parcel.

In 2007, Whitcomb obtained a third loan — this time from Quicken Loans, Inc. — in the amount of $207,000. Once again, the corresponding security deed used the legal description for the unimproved parcel. In connection with this latest loan, however, Whitcomb completed a "uniform residential loan application," and the application apparently bears his initials and signature. Accompanying the application is a residential appraisal report. The report contains several photographs of the interior and exterior of Whitcomb's home; sketches of the floor plan for the home; information regarding the size of each floor; and details on the sales of comparable residential properties and the respective homes that were a part of these sales. The loan application reflects that the purpose of the loan was to "refinance" a "primary

residence" and that the residence was built in 1992. A portion of the loan was used to pay off the Wells Fargo Bank loan. The Quicken security deed was later assigned to the plaintiff in the present case, Bank of America. Bank of America foreclosed on the security deed, as evidenced by a deed under power, and then conveyed the unimproved parcel to Federal National Mortgage Association ("Fannie Mae"). Years later, Fannie Mae conveyed the unimproved parcel back to Bank of America via quitclaim deed.

Bank of America then filed a complaint against Whitcomb in the Forsyth County Superior Court, requesting that the foreclosure sale be rescinded and also asking that the Quicken security deed be reformed to include the legal description for the improved parcel which contained the home. The underlying allegation was that, due to a mutual mistake, the Quicken security deed incorrectly contained the description of the unimproved parcel, whereas the parties had intended for the deed to encumber the improved parcel, as evidenced by the residential loan application that secured the loan. In his interrogatory responses, Whitcomb stated that he could not recall completing the loan application, but he simultaneously admitted that he "believed at the time that a house was located on [the unimproved] tract." Bank of America later filed a motion for summary judgment on its complaint, which the trial

4

court granted after a hearing. The trial court agreed that Quicken and Whitcomb intended for the Quicken security deed to encumber the improved parcel on which Whitcomb's home was located. As a result, the court ordered that Bank of America's deed under power be rescinded and that the Quicken security deed be reformed to identify the improved parcel. Whitcomb then filed the present appeal.

1. First, Whitcomb argues that the trial court "necessarily" determined that Bank of America had standing to bring this action, but the bank lacked standing because it was a voluntary purchaser of property from a non-party, Fannie Mae. Whitcomb, however, has waived this argument because he failed to raise it in the trial court.

"The constitutional and procedural concept of 'standing' falls under the broad rubric of 'jurisdiction' in the general sense[,]" and "a plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction." (Citations omitted.) *Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371 (667 SE2d 348) (2008). Nonetheless, the "timely assertion of a standing defense is necessary" to prevent the needless consummation of judicial and private resources if the plaintiff has no capacity to pursue the claim. *Lewis v. Van Anda*, 282 Ga. 763, 765 (1) (653 SE2d 708) (2007). To this end, a plaintiff's lack of standing is "a waivable defect,"

and "[t]he failure to assert a plaintiff's alleged lack of standing prior to the entry of judgment results in the waiver of such defense." (Citations omitted.) Id.

Here, Whitcomb failed to challenge Bank of America's standing either in his many responsive pleadings filed below or at the hearing on Bank of America's motion for summary judgment. Thus, at no point during the trial court proceedings did Whitcomb assert this argument, and the trial court's order is notably devoid of any discussion on this specific claim.[2] Whitcomb having waived his challenge to Bank of America's standing to pursue this action, this Court will not consider this argument. See *I. A. Group., LTD. Co. v. RMNANDCO, Inc.*, 346 Ga. App. 396, 398-399 (1) (816 SE2d 359) (2018) (defendant's challenge to the plaintiff's standing was waived for failure to raise it in the trial court); see also *Fulton County Bd. of Assessors v. Calliope Properties, LLC*, 312 Ga. App. 875, 878 (1) (720 SE2d 312) (2011) ("[T]he failure to raise a timely objection based upon the real party in interest results in a waiver of that issue.").

---

[2] We observe that Whitcomb stated in the trial court, on various occasions, that Bank of America voluntarily purchased the unimproved parcel from Fannie Mae. But Whitcomb never made this argument in the context of standing, as he now does on appeal.

6

2. Next, Whitcomb argues that the trial court erred in holding that Bank of America could rescind the deed under power because the language of the deed under power expressly subjects the sale of the property to what an accurate survey or inspection of the property would have shown, which is a 1.074-acre tract with no home located on it. We conclude that the language of the deed under power did not serve as a bar to rescission of the deed.

> In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction. And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced. A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance.

(Citation omitted.) *Bank of America v. Cuneo*, 332 Ga. App. 73, 78 (2) (770 SE2d 48) (2015). Stated differently, "[a] mutual mistake is one in which both parties participate by each laboring under the same misconception." (Citation omitted; emphasis supplied.) *Ledford*, supra, 274 Ga. App. at 727 (4). The mistake need not be "literally exactly the same" but only "sufficiently mutual" to find the true intention of the parties. *Cuneo*, supra, 332 Ga. App. at 80 (2). "Furthermore, although the evidence

7

as to the mistake must be clear, unequivocal and decisive, there is no rule that reformation will be denied unless the mistake be admitted by both parties." (Citation and punctuation omitted.) *Occidental Fire & Cas. of North Carolina v. Goodman*, 339 Ga. App. 427, 429 (1) (793 SE2d 606) (2016). Equity may intervene and allow reformation "even if a foreclosure has already occurred and even if the reformation alters the priority of lienholders." *Potter's Properties, LLC v. VNS Corp.,* 306 Ga. App. 621, 624 (703 SE2d 79) (2010); *DeGolyer v. Green Tree Servicing, LLC*, 291 Ga. App. 444, 447-448 (1), (3) (662 SE2d 141) (2008) (upholding the rescission of the foreclosure deed and the reformation of the security deed where the security deed contained a mutual mistake).

(a) As a preliminary matter, the trial court properly determined that, as a matter of law, Bank of America was entitled to rescission of the deed under power because Quicken and Whitcomb intended for the Quicken security deed to encumber the improved parcel. This was demonstrated by various key items of evidence. First, Whitcomb submitted the Quicken loan application and affirmed that the purpose of the loan was to refinance his primary residence which was built in 1992. Second, a detailed residential appraisal report was affixed to the application, and this report contained numerous photographs of Whitcomb's home and specifications concerning

8

the home. Third, by Whitcomb's own admission in his interrogatory responses, Whitcomb believed that a house was located on the parcel identified in the loan documents. "The above evidence shows that [Whitcomb] executed several documents exhibiting [his] intent to encumber the [parcel] that included [his] residence, not an undeveloped property." *Salas v. JP Morgan Chase Bank, N.A.*, 334 Ga. App. 274, 282 (3) (779 SE2d 48) (2015). And, Quicken issued the loan funds based on the application that Whitcomb submitted. See *Cuneo*, supra, 332 Ga. App. at 79 (2) ("The issue is whether the parties' mutually intended for the [b]ank to lend money and for the loan to be secured by the property, and in considering that issue, the court may consider other evidence related to the loans and deeds."). Subsequently, the erroneous property description for the unimproved parcel "carried over" to the deed under power, and therefore the same mistake that materialized in the Quicken security deed appeared in the deed under power. *Black v. Nationstar Mtg., LLC*, 344 Ga. App. 217, 221 (a) (809 SE2d 487) (2018).

(b) Although Whitcomb argues that the trial court should have focused on the deed under power and not the Quicken deed, this argument fails under our decision in *Black*, supra, 344 Ga. App. at 221 (a). In that case, we determined that the parties had intended that two parcels be conveyed in a security deed, rather than the single

9

parcel that was reflected in the security deed. Id. This Court explained that "although the mistaken property description later carried over to the Deed Under Power and the Special Warranty Deed, this [did] not contravene the original intent" of the parties when the mutual mistake arose. Id. Put simply, we reiterated that "it is the parties to the original instrument that must be mutually mistaken for reformation to occur." (Citation omitted.) Id. Similarly, in this case, the trial court properly examined the parties' intent at the time that the Quicken security deed was formed.

(c) Next, the language of the deed under power did not preclude Bank of America from seeking rescission. We recognize that the deed under power states that "this conveyance is subject to . . . any matters which might be disclosed by an accurate survey and inspection of the property. . . ." In Whitcomb's view, this language means that the foreclosure sale was subject to what an accurate survey or inspection of the property would have shown, which is a 1.074-acre tract without a home located on it. But Whitcomb fails to recognize that he and Quicken were laboring under a mutual mistake, and the Quicken security deed "as written *does not express the contract or intent of either of the parties.*" (Citation omitted; emphasis supplied.) *Yeazel v. Burger King Corp.*, 241 Ga. App. 90, 94 (2) (526 SE2d 112) (1999). Because the Quicken security deed arose from a mutual mistake and does not

10

reflect the parties' actual agreement, the subsequent deed under power is not binding on Bank of America with regard to the identity of the property underlying the deed. See, e.g., *Hudson v. Godowns*, 320 Ga. App. 157, 159-160 (3) (739 SE2d 462) (2013) (explaining that where there was a "mutual mistake of fact," "there had been no meeting of the minds," which is essential to the enforceability of a contract). Compare *Hurst v. McDaniel*, 159 Ga. App. 702, 703 (2) (285 SE2d 40) (1981) (written agreement was "binding on the parties even if the writing did not express the contract actually made" because there was no mutual mistake). Therefore, the language of the deed under power did not preclude Bank of America from seeking rescission.

Despite Whitcomb's urging to the contrary, our decision in *Interchange Drive, LLC v. Nusloch*, 311 Ga. App. 552 (716 SE2d 603) (2011) does not require a different result. In *Nusloch*, we held that a deed under power was subject to various covenants, in accordance with the express language of the deed. Id. at 556. In so holding, we found that the deed was considered "the true, complete understanding between the parties[,]" and we further acknowledged that "when a grantee accepts a deed, he is bound by the covenants contained therein[.]" (Citation and punctuation omitted.) Id. at 556-557. Importantly, however, *Nusloch* did not involve a mutual mistake, id., and

11

so our decision in that case does not dictate that rescission and reformation are not available in this appeal.

3. Next, Whitcomb claims that the trial court erred by not holding that Bank of America's claims were barred by its own negligence. Whitcomb posits that Bank of America had the opportunity to inspect the unimproved parcel prior to the purchase, and its failure to confirm that a house existed there amounted to negligence that prevents recovery. We determine that any alleged negligence on the part of Bank of America is not fatal to its claims.

As the Supreme Court of Georgia has repeatedly explained, where a mistake is common to both parties to the transaction, "the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced." *Curry v. Curry*, 267 Ga. 66, 67 (1) (473 SE2d 760) (1996). See OCGA § 23-2-32 (b); see also *Ehlers v. Upper W. Side, LLC*, 292 Ga. 151, 153 (1) (733 SE2d 723) (2012) (although there was an absence of "reasonable diligence" to discover the error in the deed, "there is an exception that permits the grant of equitable relief in the form of contract reformation even in cases of negligence when the other party has not been prejudiced"); *Long v. Walls*, 226 Ga. 737, 741 (177 SE2d 373) (1970) (rejecting the argument that the plaintiff did not take "certain precautionary steps" because the

12

plaintiff sought reformation based on a "mutual mistake of the parties"). "Prejudice may arise from a change in conditions such as will preclude the court from arriving at a safe conclusion as to the truth of matters in controversy, and which makes the doing of equity doubtful or impossible, such as the death of a key witness." (Citation and punctuation omitted.) *100 Lakeside Trail Trust v. Bank of Am., N.A.*, 342 Ga. App. 762, 766 (1) (804 SE2d 719) (2017).

Here, Whitcomb "ha[s] not suffered any prejudice as [he] received a loan for [$207,000], as promised, and used part of that loan to satisfy [an] earlier loan from [another lender]. . . . Nor [has Whitcomb] shown that [he] [will] suffer any prejudice if the deed is reformed." *Vibert v. Bank of Am., N.A.*, 327 Ga. App. 782, 784 (761 SE2d 162) (2014).[3] Whitcomb alludes to prejudice, arguing that the unimproved parcel is now worth less than when the foreclosure sale occurred and that a storage building located on the unimproved parcel was in "great shape" and will now require "substantial sums to make it useful again." But, "[f]actual assertions contained in a

---

[3] Whitcomb argues that Bank of America bore the burden of proving that he would not be prejudiced and that the trial court improperly placed the burden on him to show prejudice. This argument appears untenable under precedent from the Supreme Court of Georgia. See *Zaimis v. Sharis*, 275 Ga. 532, 533 (1) (570 SE2d 313) (2002) (no impediment to reformation of a lease because the *defendant* failed to show that he would be prejudiced). In any event, the record before us does not show prejudice to Whitcomb.

13

party's brief are not evidence unless supported by the record." (Citation omitted.) *Dukes v. Munoz*, 346 Ga. App. 319, 322 n.3 (1) (816 SE2d 164) (2018). In the face of record evidence on the benefits Whitcomb received from the mistake in the Quicken security deed, Whitcomb has failed to identify any actual evidence on the purported diminution in value of the unimproved parcel or the storage building. In other words, Whitcomb merely *supposes* that he will be prejudiced by the rescission and reformation of the deeds, and this Court has been clear that a party "cannot defeat summary judgment by relying on uncertain and speculative possibilities and inferences." *Hobday v. Galardi*, 266 Ga. App. 780, 782 (598 SE2d 350) (2004). Therefore, the trial court was correct in its determination that any negligence on the part of Bank of America did not bar its claims.

4. Next, Whitcomb argues that, as an act of equity, Bank of America was required to tender the unimproved parcel back to him before filing suit to rescind the foreclosure sale. This argument fails because it finds no support in the law.

We recognize, as Whitcomb argues, that "when a debtor seeks to set aside a foreclosure sale, he must first pay what he owes to the creditor absent extraordinary circumstances." *Underwood v. Colony Bank*, 362 Ga. App. 548, 557 (3) (869 SE2d 535) (2022). This maxim stems from the codified principle that "[he] who would have

14

equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." OCGA § 23-1-10. But our appellate courts have never held that, pursuant to this Code section, the *holder of a deed* must tender the subject property to a debtor as a prerequisite to seeking rescission or reformation of the deed. Nor does Whitcomb identify any such appellate decision.

Moreover, although Whitcomb repeatedly invokes OCGA § 23-1-10 as a basis to require the tender of the unimproved parcel back to him, the scope of the statute convinces us that no such tender was required in this case. OCGA § 23-1-10 "embodies both the 'unclean hands' doctrine and the concept that 'one will not be permitted to take advantage of his own wrong.'" (Citation omitted.) *Goodson v. Ford*, 290 Ga. 662, 666 (5) (725 SE2d 229) (2012). Here, Bank of America has not committed any wrongful acts that triggered the application of OCGA § 23-1-10 and required a return of the unimproved parcel to Whitcomb before it sought rescission and reformation. Indeed, Whitcomb identifies no alleged wrongdoing that directly relates to the pivotal question underlying Bank of America's claim, i.e., whether there was a mutual mistake underlying the formation of the Quicken security deed. See, e.g., *100 Lakeside Trail Trust*, supra, 342 Ga. App. at 767 (2) (holding that OCGA

15

§ 23-1-10 did not bar the bank's action to reform the security deed where the bank's alleged wrongdoing of failing to perform a title search and inducing the grantor to stop making payments did not relate to whether there was a mutual mistake in the forming of the security deed). Accordingly, we are unpersuaded by Whitcomb's argument that Bank of America was required to tender the unimproved parcel back to him before pursuing its claims.

5. Lastly, Whitcomb argues that, for various reasons, the trial court erred in holding that Bank of America established a prima facie case for rescission and reformation.[4] We conclude that none of Whitcomb's arguments served as a bar to Bank of America's claims.

(a) First, Whitcomb briefly contends that Bank of America did not show that reformation of the security deed would be equitable because it did not allege or prove that the price it paid for the unimproved parcel at foreclosure was not the fair market value of the property. A review of the record shows that Whitcomb did not raise this argument in the trial court, either in any pleading or at the hearing on Bank of America's motion for summary judgment. "After summary judgment is granted to a

---

[4] Many of the arguments in this enumeration of error have been recast from previous claims that have already been addressed in this opinion. As such, we consider only the new arguments presented.

16

movant/plaintiff, a nonmovant/defendant may not raise an argument or defense not asserted in the trial court." (Citation and punctuation omitted.) *Ambrosio v. Giordano*, 358 Ga. App. 764, 769 (3) (856 SE2d 349) (2021). Therefore, this argument has been waived.

(b) In a similarly cursory argument, Whitcomb claims that (1) Bank of America failed to show the value of the improved parcel either at the time that the security deed was executed or at the time of the foreclosure sale; and (2) Bank of America also failed to prove that the two parcels have the same value. In Whitcomb's view, these supposed deficiencies demonstrate Bank of America's failure to show that reformation of the security deed would be equitable. This argument is wholly unpersuasive.

In a reformation action such as this one, the purpose of equity is to make the instrument reflect the actual bargain between the parties and ensure that the parties receive that which was bargained for. See *100 Lakeside Trail Trust*, supra, 342 Ga. App. at 768 (4) (equity *required* reformation of the security deed to prevent a windfall to the appellant which was not bargained for). Accordingly, in determining whether equity should intervene in this case, "the *only* inquiry is, does the instrument contain what the parties intended it should and understood that it did? If not, then it may be

17

reformed by aliunde proof, so as to make it the evidence of what was the true bargain between the parties." (Citation omitted; emphasis supplied.) *Aames Funding Corp. v. Henderson*, 275 Ga. App. 323, 325-326 (620 SE2d 503) (2005). As the record here plainly shows a mutual mistake, the trial court correctly ordered the equitable reformation of the security deed to reflect the actual bargain between the parties.

(c) Next, Whitcomb argues that he presented evidence demonstrating that he did not intend to give Quicken any security interest in the improved parcel and that summary judgment was not warranted. Whitcomb relies on an affidavit, in which he stated, "I did not intend to give Quicken Loans, Inc. a security interest in a 1-acre tract of land," and "Quicken Loans, Inc. never agreed to accept, and I never agreed to convey, the 1.00 acre tract[.]"

The trial court was correct, however, in determining that these self-serving and conclusory statements did not preclude the grant of summary judgment to Bank of America. In the absence of substantiating facts, a self-serving and conclusory affidavit is insufficient to create an issue for trial. *Jones v. Bank of America Mtg.*, 254 Ga. App. 217, 218 (1) (561 SE2d 867) (2002). See also *Cuneo*, supra, 332 Ga. App. at 79 (2) ("[T]he doctrine of mutual mistake is not so narrow as to foreclose its application simply by one party's affidavit asserting that she did not intend to borrow

18

the money."). Whitcomb identifies no proper facts substantiating his averments. Instead, he merely argues that the appraisal report shows that the "subject" of the residential appraisal was the unimproved parcel and that the parties' only mistake was believing that his home was located on that parcel. But this is precisely the basis for the application of the reformation doctrine. As we have unequivocally explained, "the doctrine of equitable reformation requires the Court to find that the parties were acting under the identical *mistaken belief*." (Citation omitted; emphasis supplied.) *Cuneo*, supra, 332 Ga. App. at 79 (2). The record in this case plainly shows a sufficiently mutual mistaken belief that Whitcomb's home was located on the unimproved parcel, and the trial court properly concluded that Whitcomb and Quicken intended for the loan to be secured by the parcel that contained the home.

Because Bank of America was entitled to rescission of the deed under power and reformation of the Quicken security deed, the trial court properly granted its motion for summary judgment.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur*.